**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER L. DELPORTE, an Individual, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BENEFIT EXPRESS SERVICES, LLC, | ) | **Trial by Jury Demanded** |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff through her attorneys, Michael J. Merrick of Merrick Law Firm LLC and Jonathan R. Ksiazek of DiMonte & Lizak, LLC, and for her Complaint against Defendant states as follows:

### Nature of the Action

1.      Plaintiff has the disability of chronic kidney disease which has advanced to the point of end-stage renal failure.  Soon after she notified Defendant that she would need time off work to be evaluated by the Mayo Clinic for its kidney transplant program and that she needed to begin receiving dialysis treatments three days a week, Defendant told her it was eliminating her position.  Defendant terminated Plaintiff's employment because she has a disability and sought to exercise her statutorily-protected rights.  Plaintiff brings this employment disability discrimination and retaliation action under the Americans With Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Employee Retirement Income Security Act (ERISA) and the Illinois Human Rights Act (IHRA).

**Jurisdiction & Venue**

2.      Subject matter jurisdiction is premised on the federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiff's claims under the Americans with Disabilities Act, as amended by the Americans With Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §§2612-2615 ("FMLA") and Section 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA"), arise under federal law.  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2002e-5(f)(3) as Defendant has employees and does business in this judicial district, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Plaintiff would have remained employed in this judicial district but for the unlawful employment practices alleged herein.

**Parties**

4.      Plaintiff Jennifer L. Delporte is a citizen of the United States and at all relevant times was employed by Defendant in Arlington Heights and subsequently in Schaumburg, Illinois.

5.      Defendant Benefit Express Services, LLC is an Illinois third-party benefits administration technology and service provider with a principal office in Schaumburg, Illinois.

**Common Allegations**

6.      Ms. Delporte commenced employment with Defendant on or about November 13, 2007.

2

7.      At all relevant times Ms. Delporte met or exceeded Defendant's legitimate performance expectations.

8.      Ms. Delporte received pay raises and promotions during her employment.

9.      Ms. Delporte has chronic kidney disease which has progressively worsened.

10.      In or about March 2016 private equity firm LLR Partners acquired a substantial ownership interest in Defendant.

11.      As a result of the LLR Partners acquisition, Michael Sternklar ("Sternklar") became Defendant's Chief Executive Officer ("CEO") in or about March 2016.

12.      In or about March 2016, CEO Sternklar advised Ms. Delporte that she was a "key employee" eligible for a retention bonus if she stayed with the company.

13.      In or about 2016 Ms. Delporte learned her kidney disease had progressed to end-stage renal failure.

14.      At various times during Ms. Delporte's employment, Defendant explored changing health insurance carriers.

15.      When Defendant was considering changing health insurance carriers, Ms. Delporte was interviewed by Defendant's insurance representatives regarding the nature of her kidney disease and her medical care requirements.

16.      In 2018 Ms. Delporte was Defendant's Director of Service Delivery and was responsible for directly supervising several employees.

17.      During a management meeting in or about April 2018, Jocelyn Purtell ("Purtell"), Defendant's Chief Operating Officer ("COO") who joined Defendant in or about July 2016, announced that Defendant was exploring becoming self-insured by analyzing past health claims data.

18.     On or about June 13, 2018, during a "town hall" meeting CEO Sternklar announced that the company was doing a lot of good things in the wellness area and that management was looking at claims data to determine whether it made sense for the company to become self-insured for healthcare.

19.     Upon information and belief, Defendant viewed Ms. Delporte negatively as an unwanted financial burden on its current and future health plans due to her kidney disease.

20.     On or about June 20, 2018, Ms. Delporte learned that she would need dialysis treatments.

21.     On or about June 21, 2018, Ms. Delporte took some time off work for medical testing relating to her Kidney Disease.

22.     On or about June 22, 2018, Ms. Delporte took time off work to have a hemodialysis line implanted for dialysis.

23.     Steve Carrol ("Carroll"), Defendant's Vice President of Client Services and Ms. Delporte's direct supervisor who joined Defendant in or about October 2016, approved Ms. Delporte's request to work from home the week of June 25, 2018 for her first week of dialysis.

24.     Ms. Delporte requested an accommodation of a slightly modified full-time schedule for her subsequent dialysis treatments whereby she would leave the office a few minutes early three days each week.

25.     During the ensuing weeks Ms. Delporte worked approximately 50 or more hours a week by working through her lunches, staying late, and checking her emails on her phone during dialysis treatments.

26.     On or about June 29, 2018, Ms. Delporte had a check-in call with COO Purtell.

4

27.     Ms. Delporte told Purtell about her recent medical care, including that she had a hemodialysis line implanted and had begun dialysis.

28.     Ms. Purtell told Ms. Delporte at least it wasn't a heart or lung transplant.

29.     On or about July 3, 2018, Purtell and Carroll met with Ms. Delporte and advised her that they were eliminating her position.

30.     Purtell told Ms. Delporte that they would provide her with some severance pay, at which point Carroll interjected and said, "or disability."

31.     Ms. Delporte asked Carroll what he meant by "disability."

32.     Carroll replied that Ms. Delporte could go on a disability leave just like another former employee that had gone on disability leave due to serious heart problems.

33.     Ms. Delporte told them she could check with her physician but she had been working and wanted to continue to work.

34.     Purtell again told Ms. Delporte at least it wasn't a heart or lung transplant.

35.     Ms. Delporte told them she carried her family's health insurance. Purtell replied, "We know."

36.     Ms. Delporte reminded them that she had just started dialysis. Purtell again replied, "We know."

37.     Ms. Delporte reminded them she was scheduled to go to the Mayo Clinic the following week to undergo evaluation for its kidney transplant program. Once again, Purtell replied, "We know."

38.     Purtell suggested that Ms. Delporte go to the Mayo Clinic as scheduled and go out on disability leave.

39.     Purtell then asked Ms. Delporte how her kidneys were injured.

40.    Ms. Delporte explained, as she had previously told Purtell and Carroll, that scar tissue from Endometriosis had wrapped around her ureters which shut down her kidney function and permanently damaged both kidneys.

41.    Ms. Delporte asked them if there was another job she could do to keep her health insurance.

42.    Purtell told her "no," and that someone with her credentials should look elsewhere.

43.    When Ms. Delporte mentioned an open COBRA project manager position, Purtell asked whether she really wanted to take a job for half the pay she was currently earning.

44.    Ms. Delporte stated that she would take that job in order to keep her health insurance and reminded Purtell that she had performed that job in the past.

45.    Purtell replied that the company's clients look for employees like Ms. Delporte all the time.

46.    From on or about July 9 through 13, 2018, Ms. Delporte was away from the office for her kidney transplant evaluation by the Mayo Clinic during which time she continued to do some work.

47.    On or about July 16, 2018, Carroll asked Ms. Delporte how things went at the Mayo Clinic.

48.    Ms. Delporte told him she would know soon whether she had been accepted into Mayo's kidney transplant program.

49.    On or about July 18, 2018, Carroll gave Ms. Delporte a proposed severance agreement and told her he needed a signed copy back by July 20, 2018.

50.     On or about July 20, 2018, Carroll asked Ms. Delporte about the severance paperwork.

51.     Ms. Delporte told Carroll that she had just received it two days earlier and needed more time to think about it.

52.     Ms. Delporte also told Carroll that she had applied for an open human resources manager position and that she had previously performed that job at another company.

53.     Carroll told Ms. Delporte that he and Ms. Purtell had spoken and they decided there was no way Ms. Delporte could do a "line job."

54.     Mr. Carroll also told Ms. Delporte that he could not promise her anything but if she was going to get a kidney transplant soon maybe they could get her on disability benefits.

55.     Defendant terminated Ms. Delporte on July 20, 2018.

56.     Defendant never responded to Ms. Delporte regarding her application for the human resources manager position.

## COUNT I

## ADA FAILURE TO ACCOMMODATE

57.     At all relevant times Ms. Delporte suffered from chronic kidney disease which is a physical impairment as defined by the ADA.

58.     Ms. Delporte's kidney disease substantially limits multiple major life activities including, but not limited to, the elimination of bodily waste, sleeping and interacting with others.

59.     Ms. Delporte's kidney disease also substantially limits the operation of multiple major bodily functions including, but not limited to, the kidney, bladder and genitourinary functions.

60.     Ms. Delporte's kidney disease constitutes an actual disability as defined by the ADA.

61.     Ms. Delporte also has a record, or history, of an impairment that substantially limits one or more of the major life activities described above, *i.e.*, chronic kidney disease.

62.     Defendant, specifically including but not limited to Purtell and Carroll, also regarded Ms. Delporte as having the physical impairment of chronic kidney disease.

63.     At all relevant times Ms. Delporte possessed the necessary education, skill, experience and all other requirements for the position she held with Defendant and she was able to perform the essential functions of her position, with or without a reasonable accommodation, at the time Defendant terminated her employment.

64.     At all relevant times Ms. Delporte was a qualified individual with a disability as defined by the ADA.

65.     Defendant, specifically including but not limited to Purtell and Carroll, was aware of Ms. Delporte's chronic kidney disease and believed it substantially limited one or more major life activities, including working.

66.     In or about June and July 2018, Ms. Delporte requested that Defendant provide her with the reasonable accommodations of allowing her to work a slightly modified work schedule or reassignment to a vacant position for which she was qualified.

67.     In violation of the ADA Defendant failed to provide a reasonable accommodation for Ms. Delporte including, but not limited to, allowing her a slightly modified work schedule so she could receive dialysis or reassigning her to a vacant position for which she was qualified.

68.     Defendant's stated position elimination as the reason for terminating Ms. Delporte was a pretext.

8

69.     When Ms. Delporte did not agree to go on an extended disability of leave of absence Defendant terminated her employment because of her disability.

70.     Defendant's failure to provide Ms. Delporte with a reasonable accommodation and the termination of her employment are adverse employment actions under the ADA.

71.     Defendant acted with malice and reckless indifference to Ms. Delporte's federally-protected rights.

72.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

73.     Ms. Delporte has received a notice of right to sue from the U.S. Equal Employment Opportunity Commission.

## COUNT II

## IHRA FAILURE TO ACCOMMODATE

74.     Plaintiff incorporates by reference paragraphs 1 through 70 as though fully set forth in this Count II.

75.     Defendant's failure to reasonably accommodate Ms. Delporte's disability is a violation of the Illinois Human Rights Act (IHRA).

76.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

77.     Ms. Delporte received a notice of opt out of administrative process and of right to sue from the llinois Department of Human Rights.

## COUNT III

### ADA DISABILITY DISCRIMINATION/WRONGFUL TERMINATION

78.     Plaintiff incorporates by reference paragraphs 1 through 70 and 73 as though fully set forth in this Count III.

79.     Defendant violated the ADA by refusing to allow Ms. Delporte to transfer or hire her into an open position for which she was qualified and by terminating her employment because she has an actual disability, has a record of having a disability, and/or Defendant regarded her as having a disability.

80.     Defendant acted with malice and reckless indifference to Ms. Delporte's federally-protected rights.

81.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

## COUNT IV

### IHRA DISABILITY DISCRIMINATION/WRONGFUL TERMINATION

82.     Plaintiff incorporates by reference paragraphs 1 through 70 and 77 as though fully set forth in this Count IV.

83.     Defendant violated the IHRA by refusing to allow Ms. Delporte to transfer or hire her into an open position for which she was qualified and by terminating her employment because she has an actual disability, has a record of having a disability, and/or Defendant regarded her as having a disability.

84.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

## COUNT V

## ADA RETALIATION

85.     Plaintiff incorporates by reference paragraphs 1 through 70 and 73 as though fully set forth in this Count V.

86.     Defendant retaliated against Ms. Delporte for exercising her rights under the ADA by refusing to allow her to transfer or hire her into an open position for which she was qualified and by terminating her employment because she had taken time off work to receive medical care for her disability and had requested a modified work schedule for dialysis.

87.     Defendant acted with malice and reckless indifference to Ms. Delporte's federally-protected rights.

88.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

## COUNT VI

## IHRA RETALIATION

89.     Plaintiff incorporates by reference paragraphs 1 through 70 and 77 as though fully set forth in this Count VI.

90.     Defendant retaliated against Ms. Delporte for exercising her rights under the IHRA by refusing to allow Ms. Delporte to transfer or hire her into an open position for which she was qualified and by terminating her employment because she had taken time off work to receive medical care for her disability and had requested a modified work schedule for dialysis.

91.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

## COUNT VII

## FMLA INTERFERENCE

92.     Plaintiff incorporates by reference paragraphs 1 through 70 as though fully set forth in this Count VII.

93.     Defendant is a covered employer under the FMLA.

94.     Ms. Delporte was an eligible employee under the FMLA.

95.     Ms. Delporte suffered from a serious health condition as defined by the FMLA, chronic kidney disease, in that her condition required hospitalization, inpatient treatment and multiple follow-up medical appointments including dialysis three days each week.

96.     In June and July 2018 Ms. Delporte exercised her rights under the FMLA by requesting intermittent leave for dialysis and taking time off work to receive medical care for her kidney disease.

97.     Defendant was aware of Ms. Delporte's anticipated need for future FMLA leave in connection with her chronic kidney disease including for a kidney transplant.

98.     Defendant interfered with Ms. Delporte's rights under the FMLA by failing to properly advise her of her FMLA rights, failing to allow her intermittent leave for dialysis and terminating her employment.

99.     Defendant's conduct was done in willful violation of the FMLA.

100.    As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

**COUNT VIII**

**FMLA DISCRIMINATION/RETALIATION**

101.    Plaintiff incorporates by reference paragraphs 1 through 70 and 93 through 98 as though fully set forth in this Count VIII.

102.    Defendant discriminated and retaliated against Ms. Delporte by failing to properly advise her of her FMLA rights, failing to allow her intermittent leave for dialysis, refusing to allow her to transfer or hire her into an open position for which she was qualified and terminating her employment because she had exercised her rights under the FMLA and advised Defendant of her anticipated need to exercise her FMLA rights in the future.

103.    Defendant's conduct was done in willful violation of the FMLA.

104.    As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

**COUNT IX**

**ERISA §510 INTERFERENCE**

105.    Plaintiff incorporates by reference paragraphs 1 through 70 as though fully set forth in this Count IX.

106.    Ms. Delporte was qualified for her job.

107.    Ms. Delporte was a member of Defendant's group employee health insurance plan which is covered by ERISA.

108.    Ms. Delporte was a beneficiary of the health insurance plan.

109.    Defendant knew that Ms. Delporte's ongoing medical care was extremely expensive.

110. Defendant engaged in the willful misconduct described above with the intent to cause Ms. Delporte's employment to terminate thereby depriving her of her health insurance benefits.

111. As a direct and proximate result of Defendant's unlawful conduct, Ms. Delporte suffered damages.

**WHEREFORE**, Plaintiff respectfully prays for judgment in her favor and against Defendant on all counts and for the following make-whole relief:

A. Preliminary and permanent injunctions enjoining Defendant from unlawfully discriminating or retaliating against Plaintiff;

B. Lost past and future wages and benefits in an amount to be proven at trial;

C. Compensatory damages in an amount to be proven at trial;

D. Liquidated damages;

E. Punitive damages;

F. Interest;

G. Other equitable relief including back pay, reinstatement and/or front pay;

H. Plaintiff's reasonable attorneys' fees and costs incurred herein; and

I. For such further relief that the Court may deem just and equitable.

<u>**JURY DEMAND**</u>

Plaintiff demands trial by jury.

JENNIFER L. DELPORTE


By: /s/Michael J. Merrick
     Attorney For Plaintiff


Michael J. Merrick
Merrick Law Firm LLC
150 N. Michigan Avenue, Suite 800
Chicago, Illinois 60601
Tel. (312) 269-9299
Fax (312) 269-0800
merrick@merricklawfirm.com
Attorney No. 6229849


Jonathan R. Ksiazek
DiMonte & Lizak, LLC
216 Higgins Road
Park Ridge, Illinois 60068
Tel. (847) 698-9600
Attorney No. 6296997